**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| RUBEN SOTO, | : | |
| | : | Civil Action No. 11-3115 (SDW) (MCA) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | January 24, 2012 |
| | : | |
| Respondent. | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is Petitioner Ruben Soto's ("Petitioner" or "Soto") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, the Court **DENIES** Petitioner's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 2007, a grand jury returned an eight-count second superseding indictment against Soto and his six co-conspirators, Arsenio Arzola ("Arsenio"), Benjamin Arzola ("Benjamin"), Misael Arzola ("Misael"), Domingo Hernandez ("Hernandez"), and Maximo Nieves ("Nieves"). (Resp't Answer 1, ¶ 1, Pet'r Br. 2.) Count One of the indictment charged Soto with conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A), and 846. (*Id.*)

On September 10, 2007,[1] the joint trial of Soto, Arsenio, Benjamin, Misael, Hernandez, and Nieves commenced in this Court.  (Pet'r's Br. 2.)  On October 26, 2007, Petitioner was convicted of conspiracy to posses with intent to distribute five kilograms of cocaine in violation of 21 U.S.C. § 846.  (*Id*.)  On July 30, 2007, he was sentenced to 210 months in prison.  (*Id*.)

On January 14, 2010, the Third Circuit affirmed Soto's conviction and sentence.  *United States v. Arzola*, 360 F. App'x 287 (3d Cir. 2010).  On April 11, 2011, Petitioner commenced the instant action by filing a § 2255 claim alleging that "[t]he conviction was obtained and/or sentence [was] imposed in violation of the Sixth Amendment to the Constitution of the United States, specifically, the right to the assistance of counsel and the right to effective assistance of counsel at all critical stages of the criminal proceedings."  (Pet'r 's Br. 1.)

## LEGAL STANDARD FOR § 2255 PETITIONS

A district court, in considering a petition under 28 U.S.C. § 2255, must "accept the truth of the [petitioner's] factual allegations unless they are clearly frivolous on the basis of the existing record."  *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks omitted).  If the § 2255 petition and the underlying case record show conclusively that the petitioner is not entitled to relief, the district court is not required to hold an evidentiary hearing. *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  Furthermore, Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts provides: "If it plainly appears from the [petition], any attached exhibits, and the record of prior proceedings that the [petitioner] is not entitled to relief, the judge must dismiss the [petition] and direct the clerk to notify the [petitioner]."

---

[1] Petitioner's brief states 1997 as the year in which the action began; however, the correct year is 2007.

## ANALYSIS

### I.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that he received ineffective assistance of counsel from his trial and appellate counsel.  Petitioner contends that his trial counsel was ineffective for failing to object to Special Agent Rudy Mews's ("Mews") testimony, which allegedly included improper summary and fact testimony, inaccurate information, and improperly vouched for witness Jose Reyes ("Reyes").  Petitioner also alleges that his trial counsel failed to object to flawed jury instructions, which did not instruct the jury to distinguish between expert and fact testimony, and which failed to instruct the jury that inferences used to prove an element of the offense required proof beyond a reasonable doubt.  In addition, Petitioner claims that he received ineffective assistance from his appellate counsel, who failed to "recount[] the testimony of the witnesses" and to "claim[] the trial errors" on appeal.  (Pet'r 's Br. 17.)  Finally, Petitioner claims that appellate counsel was ineffective for failing to argue that there was insufficient evidence that he was guilty of conspiracy, and for failing to argue that the district court erred in applying the sentencing guidelines.[2]  (*Id.* at 18.)

Section 2255 petitioners bear the burden of proving ineffective assistance of counsel.  *See United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).  A defendant is denied the right to effective assistance of counsel if (1) his attorney's performance falls below "an objective standard of reasonableness," and (2) there is a "reasonable probability" that such ineffectiveness prejudiced the outcome of the trial.  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

The first prong requires a petitioner to identify those acts or omissions by counsel that were "outside the wide range of professionally competent assistance."  *Id.* at 690.  A court must

---

[2] Petitioner makes this argument although his § 2255 counsel concedes that she "does not have the PSI or the sentencing transcript, so she cannot determine the basis for the guidelines calculation."  (Pet'r 's Br. 18 n.7.)

be highly deferential when assessing counsel's performance, and "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Further, a court must make "every effort . . . to eliminate the distorting effects of hindsight." *Id.* at 689. The *Strickland* Court reasoned, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Therefore, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

The second prong requires a petitioner to show a reasonable probability that, but for counsel's unprofessional mistakes, the outcome of the proceeding would have been different. *Id.* at 694. A reasonable probability of prejudice is one "sufficient to undermine confidence in the outcome." *Id.* Furthermore, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding" because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693.

### 1. Agent Mews's Testimony

#### a. Mews Did Not Testify as a Fact Witness

Petitioner contends that his trial counsel was ineffective for failing to object to Agent Mews's testimony, which allegedly included improper summary and fact testimony. Soto further maintains that "the prosecution failed to 'assure [sic] that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury [could] give proper weight to each type of testimony.'" (Pet'r's Br. 9.) Soto takes issue with the following testimony:

MR. CARLETTA: You recognize the notations on this pad?

MEWS: Top or the bottom part?

MR. CARLETTA: Right here.

MEWS: Yes.

MR. CARLETTA: What kind of notations are those?

MEWS: It's a name, it says Ruben, 28, 28, 28, 28 grams of cocaine.

MR. CARLETTA: Are these notations similar to ledgers that you reviewed in your experience?

MEWS: Yes.

MR. CARLETTA: All right. What types of ledgers?

MEWS: Drug ledgers, 28 is an ounce.

MR. CARLETTA: That's what you believe the number 28 to represent there?

MEWS: Yup.

MR. CARLETTA: Why do you say that?

MEWS: Because that's a common quantity of cocaine that's sold.

MR. CARLETTA: All right. So it looks like, what, you have four amounts there?

MEWS: Yes.

MR. CARLETTA: I'm going to show you another page. By the way, you recognize the name there?

MEWS: Yes, it says Ruben. I also notice, you know, it says R 15.

MR. CARLETTA: What does that mean to you?

MEWS: During the course of my going through all this evidence, R would stand for uncut cocaine; 15 would stand for, in this case, probably grams because of the number next to it.

MR. CARLETTA: That's your belief, that R would stand for uncut cocaine?

MEWS: Yes.

MR. CARLETTA: What is your belief, what is the basis of your opinion that R would stand for uncut cocaine?

MEWS: Well, basically, after reviewing everything, and reviewing all the calls and the transcripts, there's two types of cocaine being sold. There's R, which is uncut, and there's masu, which is cut. Masu is cheaper because it's cut with something, and the R is more expensive.

(Resp't Answer 7-8 (footnote omitted) (quoting Trial Tr. 1217-18).)[3]  This Court finds that the

testimony above was not factual.

    A fact witness is an individual "whose testimony consists of the recitation of facts and/or

---

[3] This excerpt is taken from the Government's answer because Petitioner's brief merely provides the page numbers of the trial transcripts but does not include the pertinent portions of the trial transcript.

events, as opposed to an expert witness, whose testimony consists of the presentation of an opinion, a diagnosis, etc." U.S. Dep't of Justice, U.S. Att'ys Manual § 3-19.112 (1997). Here, Mews did not give a "recitation of facts and/or events." Instead, Mews offered his "opinion" and "diagnosis" of the relevant narcotics issues based on his expert knowledge from working in the field. The Third Circuit has "recognized that law enforcement officials can rely upon their specialized knowledge or experience to offer expert testimony on various aspects of drug trafficking." *United States v. Walker*, 657 F.3d 160, 176 (3d Cir. 2011) (citing *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002); *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999)). Additionally, "the operations of narcotics dealers have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror." *United States v. Watson*, 260 F.3d 301, 307 (3d Cir. 2001) (citation omitted).

In this case, the Government correctly points out that Mews's testimony discussed:

> (i) packaging, manufacture, pricing, storage, record keeping, transportation and distribution of drugs and drug proceeds; (ii) the manner and means used by narcotics traffickers to communicate using coded and cryptic language; (iii) the link between firearms and drug distribution; and (iv) methods and reasons describing where, how and why drug dealers commonly keep, store and carry firearms.

(Resp't Answer 6.) Most of this testimony involved his interpretation of recorded conversations; such testimony is considered expert testimony. For instance, Mews aided the jury's understanding of these conversations by explaining code words such as "paint" (cocaine) and "toy" (gun). (*Id.*); *see Watson*, 260 F.3d at 308 ("[A] Government expert may testify about the meaning of narcotic code words.").

Additionally, Petitioner fails to state which specific statements from the above excerpt are factual testimony. Notwithstanding Petitioner's vague claim, the excerpt shows that Mews

was using his expert knowledge in narcotics to help the jury interpret the relevant evidence.[4]

Further, Mews was listed only as an expert witness for the Government; he never testified as a

fact witness. Soto fails to provide any specific examples to support his assertion that Mews

testified as a fact witness.  Consequently, he cannot succeed on an ineffective assistance of

counsel claim against his trial counsel on this ground.

### b.  Mews Did Not Provide "Materially Inaccurate Information"

Petitioner claims that trial counsel should have objected to Mews's testimony because

Mews "injected materially inaccurate information into the trial."  (Pet'r's Br. 10.)  Specifically,

Soto argues that the testimony was "unfairly prejudicial" because Mews read: "Ruben, 28, 28, 28

grams of cocaine" from the drug ledger but did not inform the jury that there was more than one

person named "Ruben" in the case.  (*Id.* at 10-11.)  Petitioner further claims that Mews "let the

jury draw the inference that Ruben Soto was the 'Ruben' on the drug ledger."  (*Id.* at 11.)

Soto's argument lacks merit.  Mews read this excerpt verbatim from an exhibit that was

admitted into evidence.  Therefore, he did not "inject" any "materially inaccurate information

into the trial" as Petitioner suggests.  Petitioner's argument that Mews misled the jury into

believing that he was the "Ruben" being referred to in the drug ledger is also meritless.  As

stated earlier, Mews was reading an excerpt from the drug ledger.  The ledger did not identify the

"Ruben" mentioned in the excerpt.  Therefore, he would not have had any basis to testify as to

which "Ruben" was being referred to in the ledger.  Furthermore, Mews was offered as an expert

---

[4] Fed. R. Evid. 702 provides:

> A witness  who is qualified as an expert by knowledge, skill, experience,
> training or education may testify in the form of an opinion or otherwise if:
> (a)  the expert's scientific, technical or other specialized knowledge will help
>      the trier of fact to understand the evidence or determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the
>      case.

witness; therefore, it would have been inappropriate for him to testify as to which "Ruben" was being referred to in the ledger because that would qualify as factual testimony.  Soto contends that Mews improperly offered factual testimony, but contradicts himself by asserting that Mews should have provided factual testimony to indicate which "Ruben" was being referenced in the ledger.

Even if Soto could prove that trial counsel was ineffective for failing to object to Mews's testimony, which did not identify the Ruben mentioned in the ledger, he cannot meet the "prejudice" prong of the *Strickland* test.  *Strickland*, 466 U.S. at 694.  This is because Detective Felix Pacheco testified that there were two "Rubens" in the case.  (Pet'r's Br. 5 (citing Trial Tr. 2030).)  Therefore, contrary to Soto's assertion, the jury was made aware that Petitioner was not the only individual named "Ruben" in the case.  Consequently, Mews's failure to identify the Ruben named in the ledger did not prejudice Soto.  Thus, this argument fails.

Petitioner also argues that Mews's testimony was prejudicial because there was no physical evidence linking him to the conspiracy.  (Pet'r's Br. 4.)  Soto's argument lacks merit. He raised a similar argument on appeal, claiming that there was "insufficient evidence supporting his conviction."  *Arzola*, 360 F. App'x at 289.  The Third Circuit rejected all of Petitioner's arguments because the record demonstrates "overwhelming evidence of guilt" against Petitioner.  *Id.*  Because § 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal," Petitioner's claim fails.  *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (internal quotation marks and citation omitted).

### c.  Mews Did Not Vouch for Reyes

Petitioner argues that trial counsel was ineffective because he failed to object to Mews's testimony, which "mirrored and vouched for the testimony of [] Reyes."  (Pet'r's Br. 10.)  Soto's

argument suffers from two flaws. First, Petitioner does not specify which aspects of Mews's testimony impermissibly mirrored Reyes's testimony. Second, Petitioner raised a similar argument on his direct appeal and the Third Circuit concluded that it was meritless. *Arzola*, 360 F. App'x at 289 (finding no merit in Petitioner Soto's argument that "the prosecution improperly vouched for a government witness"). Section 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." *DeRewal*, 10 F.3d at 105 n.4 (internal quotation marks and citation omitted).

### 2. Jury Instructions

#### a. Instructions on Mews's Testimony

Additionally, Soto claims that trial counsel was ineffective for failing to request jury instructions that would inform the jury of Mews's "dual role as a fact witness and an expert witness." (Pet'r's Br. 15.) This claim fails because, as previously discussed, Mews testified only as an expert witness. Also, after listing Mews as a narcotics expert, this Court instructed the jury on Mews's role as an expert witness. (*See* Resp't Answer 14 (citing Trial Tr. 2732-33).)) Therefore, Petitioner's argument that he would have been acquitted if the jury had been instructed on a "line of demarcation" is without merit. (Pet'r's Br. 11-15.)

#### b. Instructions on Inferences

Petitioner, relying on case law from the Second Circuit and Pennsylvania state law, also claims his trial counsel was ineffective because counsel did not object to "jury instructions which failed to communicate that inferences tending to prove an element of the offense had to be established beyond a reasonable doubt whereas inferences not involving elements of the offense did not have to be established beyond a reasonable doubt." (Pet'r's Br. 17.) This argument is without legal support, as it is well established that elements of an offense, not inferences, must

be proven beyond a reasonable doubt.  *See Clark v. Arizona*, 548 U.S. 735, 796 (2006) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 703-04 (1975)).  Because this Court instructed the jury accordingly, Petitioner's argument fails.

## II.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims his appellate counsel was ineffective because counsel failed to "recount[] the testimony of the witnesses" or "claim[] the trial errors" that Petitioner argues in this Motion.  (Pet'r's Br. 17.)  Petitioner claims that if appellate counsel had been effective in this manner, "there was a reasonable probability that the appellate court would have vacated the sentence on the grounds that the guidelines had not been calculated in keeping with the trial testimony."  (*Id.* at 18.)

Soto faces a heavy burden as the Third Circuit has stressed the broad discretion given to appellate counsel in selecting issues to argue on appeal:

> [T]here is no duty to raise every possible claim.  An exercise of professional judgment is required.  Appealing losing issues runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . [T]he process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.

*Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (internal quotation marks and citations omitted).

In light of the broad discretion given to appellate counsel, this Court concludes that appellate counsel's performance did not fall below an objective standard of reasonableness.  Additionally, no prejudice resulted from appellate counsel's failure to raise the arguments Petitioner asserts in this Motion because those claims have no merit.  Furthermore, Petitioner's claim that the Third Circuit would have vacated his sentence if appellate counsel had raised these

arguments fails because on appeal, the Third Circuit held that this Court properly exercised its discretion to sentence Petitioner.  *See Arzola*, 360 F. App'x at 289.  Therefore, Soto has failed to demonstrate that he received ineffective assistance of appellate counsel.

## <u>CONCLUSION</u>

For the reasons stated above, the Motion is **DISMISSED** with prejudice.


<u>s/Susan D. Wigenton, U.S.D.J.</u>


cc:  Madeline Cox Arleo, U.S.M.J.